**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**MIRIAM WHITE**,

          Plaintiff,

v.

**SAN JUAN BASIN AREA AGENCY ON AGING**,
a Colorado Nonprofit Corporations, and

**CHRISTINA KNOELL**, individually

          Defendants.

---

## COMPLAINT

---

COMES NOW Plaintiff, Miriam White, by and through her counsel, Cornish & Dell'Olio, P.C., and for her Complaint against Defendants San Basin Area Agency on Aging and Christina Knoell, states as follows:

### Introduction

1.     After Miriam White submitted a grievance raising concerns about disability discrimination and requested that her employer, the San Juan Basin Area Agency on Aging, provide her with reasonable accommodations for her disability, she was demoted from a full-time Advocate position to an Administrative Assistant position and had her hours cut by 80%. After that demotion, Ms. White's lawyer sent a letter to Defendants noting that the demotion was discriminatory and demanding that Ms. White be reinstated to her Advocate position. Three days later, Defendants terminated Ms. White's employment. Ms. White brings this action

against San Juan Basin Area Agency on Aging for damages and other relief under Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701, *et seq.* and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq.* Ms. White invokes this Court's supplemental jurisdiction for her claim against Christina Knoell for aiding and abetting discrimination in violation of the Colorado Anti-Discrimination Act and for intentional interference with contract.

## Jurisdiction

2.      Jurisdiction is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. §§ 1331 and 1367.

## Venue

3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the State of Colorado.

## Exhaustion of Administrative Remedies

4.      On November 5, 2022, Ms. White filed a timely charge of discrimination with the Colorado Civil Rights Division alleging disability discrimination, failure to accommodate, and retaliation against San Juan Basin Area Agency on Aging.

5.      On November 5, 2022, Ms. White filed a timely charge of discrimination with the Colorado Civil Rights Division alleging that Christina Knoell aided and abetted employment discrimination against Ms. White.

6.      Ms. White has received right to sue letters from the Colorado Civil Rights Division for both charges of discrimination.

7.      This lawsuit is filed within 90 days of Ms. White's receipt of those right to sue letters.

8.      Plaintiff is not required to exhaust her Rehab Act claims.

**Parties**

9.      Miriam White is a resident of Colorado Springs, CO who was previously employed by the San Juan Basin Area Agency on Aging.

10.     The San Juan Basin Area Agency on Aging is the state-recognized Area Agency on Aging for Archuleta, Dolores, La Plata, Montezuma, and San Juan Counties.

11.     The San Juan Basin Area Agency on Aging receives federal funding and financial assistance for its operations.

12.     Throughout Plaintiff's employment, the San Juan Basin Area Agency on Aging received funds and financial assistance directly and indirectly from the United States Department of Health and Human Services pursuant to the Older Americans Act, 42 U.S.C. § 3001, *et seq.* The San Juan Basin Area Agency on Aging received federal funds and financial assistance directly, indirectly, and as a subrecipient, in 2022.

13.     The federal funds and financial assistance received by the San Juan Basin Area Agency on Aging are used for the Agency's operations, including the operation of the programs on which Plaintiff worked.

**Factual Allegations**

14.     Paragraphs 1-12 are incorporated herein.

15.     The federal Older Americans Act created a network of Area Agencies on Aging and Native American Aging Programs in communities across the country.

16.     The Older Americans Act established the Administration on Aging (AoA) at the federal level.

17.     The AoA awards federal funds to State Units on Aging, based on the senior population.

18.     The State is divided into Planning and Service Areas (PSA); programs are effectively developed and targeted to meet the unique needs of elders residing in that area.

19.     Colorado funds 16 Area Agencies on Aging ("AAA"), which in turn fund local service providers.

20.     The San Juan Basin Area Agency on Aging is the AAA for Colorado's Region 9, which includes the counties of Archuleta, Dolores, La Plata, Montezuma, and San Juan.

21.     The vast majority of the financial support received by the San Juan Basin Area Agency on Aging comes from federal sources.

22.     The San Juan Basin Area Agency on Aging receives federal financial support directly.

23.     The San Juan Basin Area Agency on Aging receives federal financial support indirectly, such as when the federal government distributes money to the state of Colorado, and the state of Colorado thereafter disburses those federal funds to the San Juan Basin Area Agency on Aging.

24.     As a recipient of federal financial assistance, the San Juan Basin Area Agency on Aging is obligated to comply with the Rehab Act.

25.     In 2019, Ms. White was involved in a roll-over car accident.

26.     Ms. White suffered a number of injuries in the accident, including injuries to her neck and back, and a traumatic brain injury ("TBI").

27.     The injuries to Ms. White's neck and back cause her to suffer chronic pain.

28.     Because of the injuries to Ms. White's neck and back and the chronic pain caused by those injuries, Ms. White's doctor recommended that she be provided with ergonomic accommodations in the workplace and that she not lift more than five pounds.

29.     Ms. White also suffers residual symptoms from the TBI.

30.     The TBI, and the symptoms it causes, limit Ms. White's ability to concentrate, limit her memory, and limit her ability to focus on multiple tasks at once, particularly if she is experiencing high anxiety.

31.     The chronic neck and back pain that Ms. White suffered substantially limited her in the major life activities of lifting and sitting.

32.     The TBI, and the symptoms it causes, substantially limited Ms. White in the major life activities of concentrating and thinking.

33.     The TBI, and the symptoms it causes, substantially limited Ms. White's brain and neurologic major bodily functions.

34.     Ms. White was hired by the San Juan Basin Area Agency (hereafter "the Agency") on August 20, 2019.

35.     Ms. White worked for the Agency in various positions until her employment was terminated on September 19, 2022.

36.     Throughout Ms. White's employment with the Agency, she met all the minimum qualifications for the positions she held.

37.     Throughout Ms. White's employment with the Agency, she performed the duties of her positions satisfactorily.

38.     Ms. White was hired to work as a Program Manager/Coordinator.

39.    Ms. White was supervised by the Agency's Executive Director, Christina Knoell.

40.    Approximately three months into Ms. White's employment, Ms. Knoell believed that the Program Manager/Coordinator position was a good fit for Ms. White's skills, education, and work history.

41.    Approximately three months into Ms. White's employment, Ms. Knoell recognized that the job description she had given Ms. White was immense.

42.    Approximately three months into Ms. White's employment, Ms. Knoell was concerned that she was giving Ms. White too much work and the amount of work was preventing Ms. White from completing all her tasks within 40 hours.

43.    Approximately three months into Ms. White's employment, Ms. Knoell was worried that she was setting Ms. White up to be overwhelmed.

44.    On December 18, 2019, Ms. Knoell changed Ms. White's position to take away some of the duties that had been assigned to Ms. White.

45.    On December 20, 2019, two days after Ms. Knoell notified Ms. White that her job duties were changing, Ms. White made a request for reasonable accommodation for her disabilities.

46.    Because Ms. White requested a reasonable accommodation for her disabilities on December 20, 2019, Defendants knew or should have known that Ms. White may be a qualified individual with a disability on December 20, 2019.

47.    On February 4, 2020, Ms. White was reassigned and given the position of Coordinator for AAA Programs.

48.    On May 21, 2020, Ms. White was interviewed about her work performance.

49.     During the May 21, 2020 interview, Ms. White was asked about how she was using her time and how she was improving the challenges to her use of time.

50.     In response to the question about how Ms. White was improving the challenges, Ms. White stated that she was proactively seeking the help of an outside non-profit organization with her personal disabilities which provides her with strategies in obtaining, keeping, regaining, and advancing within her job.

51.     Because Ms. White stated on May 21, 2020 that she was working with an outside non-profit organization for assistance with strategies to help her manage her disabilities at work, Defendants knew or should have known that Ms. White may be a qualified individual with a disability on May 21, 2020.

52.     On August 27, 2020, Ms. White's position was changed to an Advocacy position.

53.     On November 12, 2020, Ms. White completed training in Quickbooks desktop software.

54.     The Quickbooks training was provided to Ms. White by an outside vendor, To the Penny Bookkeeping & Payroll Services.

55.     The Agency did not pay for the Quickbooks training that Ms. White received.

56.     Ms. White's Quickbooks training was paid for by the state of Colorado's Division of Vocational Rehabilitation.

57.     The Agency was aware that the Division of Vocational Rehabilitation paid for Ms. White's Quickbooks training.

58.     Ms. White told Ms. Knoell that the Quickbooks training was being paid for by the Division of Rehabilitation.

59.    Upon information and belief formed by Ms. White's knowledge of the services provided by the Agency, Ms. Knoell and the Agency were familiar with the Division of Rehabilitation ("DVR") and knew that the DVR provides employment services to individuals with disabilities because individuals and entities who serve adults with disabilities, like the Agency, do work that overlaps with work done by the DVR.

60.    As Defendants knew that the DVR provides employment services to individuals with disabilities, and as Defendants knew that Ms. White received the Quickbooks training through the DVR, Defendants also knew that Ms. White had one or more disabilities.

61.    On January 8, 2021, Ms. White's work hours were increased.

62.    On March 1, 2021, Ms. White's duties were changed.

63.    On November 5, 2021, Ms. White received a satisfactory performance evaluation.

64.    On March 22, 2022, Ms. White was informed that her work hours would be increased effective April 1, 2022.

65.    On August 1, 2022, Ms. White submitted a grievance to the Agency pursuant to the Agency's personnel policies.

66.    In the grievance, Ms. White noted that she felt she had been subjected to unequal terms and conditions of employment due to her disability.

67.    In the grievance, Ms. White indicated her belief that she had tried to keep Ms. Knoell updated on the accommodations she needed, but that Ms. Knoell and the Agency did not consistently honor those accommodations.

68.     Ms. White noted other potential discrimination in the grievance, including being excluded from meetings and receiving information, and having her personal medical information shared without her permission.

69.     Ms. White submitted her grievance in good faith.

70.     Ms. White requested that the Agency respond to her grievance.

71.     On August 9, 2022, Ms. Knoell responded to Ms. White's grievance.

72.     Ms. Knoell's response to the grievance indicated that she had met with the Agency's Personnel Committee, and the Personnel Committee had recommended that Ms. White's complaint be investigated.

73.     The Agency would not have recommended an investigation of Ms. White's complaint if it did not believe that Ms. White brought the complaint forward in good faith.

74.     On August 16, 2022, Ms. White met with Julie Kibel, the Chair of the Agency's Personnel Committee, Sue Fletcher, the Chair of the Agency's Board, and Ms. Knoell to discuss her grievance.

75.     During the August 16, 2022 meeting, the Agency asked Ms. White for information about her disabilities.

76.     During the August 16, 2022 meeting, Ms. White stated that she had a shattered C-1 vertebrae in her neck, a TBI, and others.

77.     During the August 16, 2022 meeting, Ms. White noted that the TBI was the most challenging of her disabilities.

78.     In response to Ms. White's discussion about her disabilities on August 16, 2022, the Agency claimed that Ms. White's personnel record contained no declaration of disabilities from a medical doctor or restrictions or recommended accommodations.

79.     An employee is not required to provide a declaration from a medical doctor to establish that she has a disability.

80.     An employee is not required to provide information from a medical doctor in order to receive reasonable accommodations for a disability.

81.     During the August 16, 2022 meeting, Ms. White explained the symptoms that she suffers and how she was limited by those symptoms.

82.     In response to Ms. White's discussion about her symptoms and limitations on August 16, 2022, the Agency Board members who were present told Ms. White that other people they knew who had similar disabilities or medical conditions did not suffer from the same symptoms or limitations as Ms. White.

83.     By telling Ms. White that her symptoms and limitations were not similar to limitations suffered by others, the Agency unfairly compared Ms. White to other individuals, rather than individually assessing her needs.

84.     After the August 16, 2022 meeting, the Agency sent Ms. White a document that purported to summarize the discussions that took place at the meeting.

85.     The document sent to Ms. White after the August 16, 2022 meeting contained questions for Ms. White to answer and signify her agreement.

86.    One of the questions asked of Ms. White in the document sent to her after the August 16, 2022 meeting was: "Are you willing to retract your statement with potentially filing a civil rights violation."

87.    On September 6, 2022, Ms. White answered that question and signified that she was not willing to retract her statement about potentially filing a claim for violations of her rights.

88.    The document sent to Ms. White after the August 16, 2022 meeting contained the following statement: "I no longer wish to pursue filing a civil rights violation against the San Juan Basin Area Agency on Aging," and asked Ms. White to "Circle one: True or False."

89.    On September 6, 2022, in response to the true/false question about her intent to no longer pursue a civil rights violation, Ms. White circled "False."

90.    Ms. White's response on September 6, 2022 put Defendants on notice that her complaints had not been resolved and that she may pursue a discrimination claim against the Agency.

91.    On September 6, 2022, when Ms. White provided her responses to the Agency's questions about her intent to pursue a discrimination claim, she also provided a note from her medical provider containing information about her disabilities and potential accommodations.

92.    The note from Ms. White's medical provider contained information about Ms. White's disabilities and potential accommodations for those disabilities.

93.    The note from Ms. White's medical provider stated that Ms. White's impairments from the TBI include the ability to multitask especially if she is experiencing high anxiety.

94.     Ms. White's medical provider suggested the following accommodations for the TBI: write things down, provide more time to complete certain tasks, discussions between Ms. White and her supervisor regarding how much time a task should take and deadlines for completion.

95.     Ms. Knoell received the note from Ms. White's medical provider on September 6, 2022.

96.     Ms. Knoell received the note from Ms. White's medical provided on September 6, 2022 at the same time she received Ms. White's responses to the document from the August 16, 2022 meeting.

97.     As of September 6, 2022, when Ms. Knoell received Ms. White's response to the document from the August 16, 202 investigation and the note from Ms. White's medical provider, Ms. Knoell was aware that Ms. White was seeking reasonable accommodations for her disability.

98.     Despite her knowledge that Ms. White has requested reasonable accommodations for her disability, Ms. Knoell did not engage in any form of interactive process with Ms. White to discuss potential accommodations.

99.     On September 12, 2022, Ms. Knoell confronted Ms. White in the Agency office and demoted Ms. White.

100.    On September 12, 2022, Ms. Knoell told Ms. White that she had read the letter from Ms. White's medical provider and was alarmed that Ms. White's ability to multitask was limited by her TBI.

101.   After Ms. Knoell commented that she was alarmed that Ms. White's ability to multitask was limited by her TBI, Ms. White attempted to explain that the Agency had already made changes that were accommodating her.

102.   Rather than engage in a discussion with Ms. White about possible accommodations for her present job, Ms. Knoell said that the Agency had made a "big decision" and then proceeded to read a prepared statement to Ms. White.

103.   On September 12, 2022, Ms. Knoell read and said the following to Ms. White: Based on the letter I received from your doctor, the PA, the physician's assistant, Maria, I want to implement a plan of action based on your multiple health issues. Your PA suggests that due to your residual symptoms from a TBI, you lack the ability to multitask. Your current position is not conducive or supportive as a working role as an advocate. You wear too many hats and maintain too much responsibility.  Your past performance and current performance are and has been unsatisfactory. It is my desire to keep you on staff. Therefore, I'm changing your position to administrative assistant to accommodate your medical and disability needs and requests. Again, had I known this was the case, I would've totally changed, I would've done things differently. So, this is the first time I've ever read and had anything in your file. And as you said, you weren't required to give me at the time of hire, you never gave me anything like this. And then you said you didn't have to. So, I have been navigating in the dark about how to accommodate your health issues. So, I'm giving you a new role. I'm going to give everything to you. I'm going to ask that you sign it today and make a copy because I need copies as well.

104.   On September 12, 2022, Ms. Knoell told Ms. White that the demotion was effective that day.

105.    On September 12, 2022, Ms. Knoell told Ms. White that the demotion into the Administrative Assistant position was based on the letter from Ms. White's doctor.

106.    On September 12, 2022, Ms. Knoell told Ms. White that the only way the Agency could accommodate Ms. White was by trusting Ms. White's doctor's statement that Ms. White was not able to multitask.

107.    Ms. Knoell's statement that Ms. White's doctor had said Ms. White was not able to multitask was wrong.

108.    Ms. White's medical provider indicated that Ms. White's ability to multitask was impacted by high anxiety.

109.    Ms. White's medical provider did not state that Ms. White could never multitask.

110.    Ms. White's medical provider indicated that while Ms. White does have an impairment that limits her ability to multitask, her medical provider also stated that there should be a conversation between Ms. White and the Agency to determine appropriate reasonable accommodations.

111.    No conversation between Ms. White and the Agency about appropriate reasonable accommodations ever occurred.

112.    After telling Ms. White that she was being demoted, Ms. Knoell gave Ms. White a written "Corrective Action & Performance Concerns" document stating that Ms. White was being demoted to an Administrative Assistant position to accommodate Ms. White's medical and disability needs/requests.

113.    At the time of the notice of the demotion on September 12, 2022, Ms. White was working a full time, forty hour per week schedule as an Advocate earning an annual salary of

$49,608, as well as health insurance benefits valued at $3,900 per year, and a 4% Simple IRA match paid by the Agency.

114.    The Administrative Assistant position Ms. White was demoted into had a work schedule of eight hours per week at an hourly wage of $22 and did not offer health insurance or the IRA match.

115.    The demotion from Advocate to Administrative Assistant cut Ms. White's hours by 80%, from 40 to eight per week.

116.    The demotion from Advocate to Administrative Assistant cut Ms. White's effective annual compensation by over 81.5% from $49, 608 to $9,152.

117.    The demotion from Advocate to Administrative Assistant deprived Ms. White of employer-provided health insurance benefits worth approximately $3,900 per year.

118.    The demotion from Advocate to Administrative Assistant deprived Ms. White of an employer match of 4% of any contributions to a Simple IRA.

119.    Although the note from Ms. White's medical provider contained suggested reasonable accommodations that would have accommodated Ms. White's TBI, Ms. Knoel did not discuss any of those potential accommodations with Ms. White.

120.    There were many potential reasonable accommodations available that the Agency could have provided to Ms. White that would have enabled her to perform the essential functions of her job.

121.    Ms. White's TBI-related symptoms could have been accommodated by allow Ms. White to take notes of meetings or discussions, or to record those meetings or discussions, which would have helped with her memory and concentration issues.

122.    Ms. White also could have been accommodated by being given extra time to complete certain tasks.

123.    As Ms. White was a salaried employee, there would have been no additional cost to the Agency to allow Ms. White to work more hours if she needed more time to complete certain tasks.

124.    Ms. White's limitations on multitasking could have been accommodated in a variety of ways, including allowing her to have blocks of time where she could complete tasks without interruption or the expectation that she multitask.

125.    The Agency failed to consider any potential accommodations for Ms. White and instead demoted her.

126.    After Ms. White was told she was demoted, Ms. Knoell told her to leave work and take the following week off to think about the demotion and decide what she wanted to do.

127.    Ms. Knoell then demanded that Ms. White sign the Corrective Action & Performance Concerns document and the Confirmation of Position & Pay Status documents.

128.    Ms. White was reluctant to sign the documents, as she had not been given an opportunity to review those documents.

129.    When Ms. White refused to sign the documents without an opportunity to read them first, Ms. Knoell stated that "this is really important.  You are threatening to sue us, so we have to have everything signed."

130.    After Ms. Knoell raised concerns about Ms. White suing the Agency, Ms. Knoell told Ms. White that she was restructuring and giving a lot of Ms. White's advocacy responsibilities to another employee, Deb.

131.    Ms. Knoell also said that Ms. White would be very limited working for Ms. Knoell until something changed and stated the reason was that Ms. White's performance and communication had been poor.

132.    At the conclusion of the September 12, 2022, Ms. White was left with the choice of accepting the demotion or losing her job.

133.    After Ms. White was notified of the demotion, she retained an attorney, Mark Kollasch of Disability Law Colorado.

134.    On September 16, 2022, Mr. Kollasch emailed a letter to Defendants explaining that the decision to demote Ms. White after she requested a reasonable accommodation appeared to be a form of disability discrimination.

135.    Mr. Kollasch's letter requested that the Agency reinstate Ms. White into her Advocate position, reconsider her request for reasonable accommodations, and engage in an interactive process with Ms. White to determine how to accommodate her disabilities.

136.    Defendants did not respond to Mr. Kollasch's letter prior to September 19, 2022.

137.    Having not received any response from Defendants, Ms. White went to work that morning as she had been directed by Ms. Knoell.

138.    Shortly after Ms. White arrived at work on Monday, September 19, 2022, Ms. Knoell terminated Ms. White's employment.

139.    Ms. Knoell gave Ms. White a letter dated September 19, 2022 that said September 19 was Ms. White's last day with the Agency and that the Agency was severing her employment at-will.

140.    After Ms. Knoell terminated Ms. White's employment, she started throwing Ms. White's personal belongings into the hallway outside the office.

141.    After Ms. Knoell terminated Ms. White's employment, she falsely accused Ms. White of trespassing and of touching her.

142.    The Agency failed to accommodate Ms. White's disabilities.

143.    Ms. Knoell aided and abetted the Agency's failure to accommodate Ms. White's disabilities by failing to engage in an interactive process with Ms. White, by failing to consider potential accommodations for Ms. White, and by engaging in other conduct, including making repeated false denials of knowledge of Ms. White's disabilities and need for reasonable accommodations.

144.    The Agency discriminated against Ms. White because of her disability when it failed to accommodate her, when it demoted her and cut her pay and benefits, and when it terminated her employment.

145.    Ms. Knoell aided and abetted the Agency's disability discrimination against Ms. White by failing to engage in an interactive process or otherwise work to find a reasonable accommodation for Ms. White, by demoting Ms. White, cutting her pay and benefits, and by terminating Ms. White's employment.

146.    The Agency retaliated against Ms. White when demoted her and terminated her employment because she engaged in protected activity of requesting reasonable accommodations, submitting a grievance challenging employment discrimination, refusing to confirm that she would not pursue discrimination claims, and hiring a lawyer to advocate for her rights in the workplace.

147.     Ms. Knoell aided and abetted the Agency's retaliation against Ms. Whtie by demoting Ms. White and terminating her employment after Ms. White engaged in protected opposition to discrimination.

148.     Ms. White has suffered damages because of Defendants' conduct.

**First Cause of Action**
**Rehabilitation Act - Failure to Accommodate**
**(Against Defendant San Juan Basin Area Agency on Aging)**

149.     Plaintiff realleges all prior paragraphs and incorporates them herein.

150.     Defendant San Juan Basin Area Agency on Aging receives federal financial assistance.

151.     Defendant San Juan Basin Area Agency on Aging is subject to the provisions of the Rehabilitation Act of 1973.

152.     Plaintiff is a qualified individual with a disability, specifically chronic pain in her neck and back due to a broken vertebrae in her neck, and symptoms associated with a traumatic brain injury.

153.     Plaintiff's chronic pain and TBI symptoms substantially limited her in the major life activities of sitting, lifting, concentrating, and thinking.

154.     Plaintiff's TBI symptoms substantially limited her brain and neurologic major bodily functions.

155.     Plaintiff was qualified for her position.

156.     Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

157.     Plaintiff requested a reasonable accommodation, or alternatively, Defendant Agency was aware of Plaintiff's need for a reasonable accommodation.

158.     Defendant Agency failed to engage in the interactive process with Plaintiff regarding any potential reasonable accommodations.

159.     Defendant Agency failed to provide Plaintiff with a reasonable accommodation at any time after her request for a reasonable accommodation or after Defendant Agency was aware of Plaintiff's need for a reasonable accommodation.

160.     There were reasonable accommodations available to Plaintiff that Defendant Agency could have provided, including assistive aids, schedule modifications, allowing Plaintiff to take notes during meetings and conversations to assist with her memory or recollection, allowing Plaintiff to record meetings or conversations to assist with her memory or recollection, allowing Plaintiff to use more time to complete certain tasks to assist with her difficulties concentrating or multitasking, and allowing Plaintiff to have blocks of time for completing tasks where she was not interrupted to assist with her difficulties concentrating.

161.     Rather than provide Plaintiff with a reasonable accommodation, Defendant Agency demoted Plaintiff.

162.     Defendant Agency's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

163.     Defendant Agency acted with malice and with reckless disregard for Plaintiff's federally protected right to reasonable accommodations in the workplace.

164.    As a result of Defendant Agency's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Second Cause of Action
### Rehabilitation Act – Discriminatory Termination of Employment
### (Against Defendant San Juan Basin Area Agency on Aging)

165.    Plaintiff realleges all prior paragraphs and incorporates them herein.

166.    Defendant San Juan Basin Area Agency on Aging receives federal financial assistance.

167.    Defendant San Juan Basin Area Agency on Aging is subject to the provisions of the Rehabilitation Act of 1973.

168.    Defendant Agency knew that Plaintiff suffered from disabilities including chronic neck and back pain and a traumatic brain injury.

169.    Defendant Agency knew that Plaintiff's disabilities caused difficulties with lifting, sitting, concentrating and thinking, and limited Plaintiff's brain and neurologic bodily functions.

170.    Defendant Agency regarded Plaintiff as having a disability.

171.    Defendant Agency knew that Plaintiff had a record of a disability.

172.    Defendant Agency terminated Plaintiff's employment on September 19, 2022 because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

173.    Defendant Agency's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

174.    Defendant Agency acted with malice and with reckless disregard for Plaintiff's federally protected right not to be terminated because of his status as a qualified individual with a disability.

175.    As a result of Defendant Agency's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Third Cause of Action**
**Rehabilitation Act – Discriminatory Termination of Employment**
**(Against Defendant San Juan Basin Area Agency on Aging)**

176.    Plaintiff realleges all prior paragraphs and incorporates them herein.

177.    Defendant San Juan Basin Area Agency on Aging receives federal financial assistance.

178.    Defendant San Juan Basin Area Agency on Aging is subject to the provisions of the Rehabilitation Act of 1973.

179.    Section 504 of the Rehabilitation Act prohibits retaliation against any individual who has opposed acts or practices made illegal by the Rehabilitation Act.

180.    Plaintiff opposed disability discrimination when she submitted a grievance, when she requested reasonable accommodations, and when she hired a lawyer to advocate for her rights in the workplace.

181.    Defendant Agency demoted Plaintiff because of her grievance and her request for a reasonable accommodation.

182.    Defendant Agency terminated Plaintiff because of her opposition to discrimination, including her grievance, her request for an accommodation, and her hiring a lawyer to advocate for her rights in the workplace.

183.    But for Plaintiff's protected activity and opposition to discrimination, her employment would not have been terminated.

184.    Defendant Agency's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

185.    Defendant Agency acted with malice and with reckless disregard for Plaintiff's federally protected right not to be terminated because of his status as a qualified individual with a disability.

186.    As a result of Defendant Agency's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Fourth Cause of Action**
**Colorado Anti-Discrimination Act—Failure to Accommodate**
**(Against Defendant San Juan Basin Area Agency on Aging)**

187.    Plaintiff realleges all prior paragraphs and incorporates them herein.

188.    Plaintiff exhausted her administrative remedies under the Colorado Anti-Discrimination Act.

189.    Plaintiff is a qualified individual with a disability, specifically chronic pain in her neck and back due to a broken vertebrae in her neck, and symptoms associated with a traumatic brain injury.

190.    Plaintiff's chronic pain and TBI symptoms substantially limited her in the major life activities of sitting, lifting, concentrating, and thinking.

191.    Plaintiff's TBI symptoms substantially limited her brain and neurologic major bodily functions.

192.    Plaintiff was qualified for her position.

193.    Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

194.    Plaintiff requested a reasonable accommodation, or alternatively, Defendant Agency was aware of Plaintiff's need for a reasonable accommodation.

195.    Defendant Agency failed to engage in the interactive process with Plaintiff regarding any potential reasonable accommodations.

196.    Defendant Agency failed to provide Plaintiff with a reasonable accommodation at any time after her request for a reasonable accommodation or after Defendant Agency was aware of Plaintiff's need for a reasonable accommodation.

197.    There were reasonable accommodations available to Plaintiff that Defendant Agency could have provided, including assistive aids, schedule modifications, allowing Plaintiff to take notes during meetings and conversations to assist with her memory or recollection, allowing Plaintiff to record meetings or conversations to assist with her memory or recollection, allowing Plaintiff to use more time to complete certain tasks to assist with her difficulties concentrating or multitasking, and allowing Plaintiff to have blocks of time for completing tasks where she was not interrupted to assist with her difficulties concentrating.

198.    Rather than provide Plaintiff with a reasonable accommodation, Defendant

Agency demoted Plaintiff.

199.    Plaintiff was demoted because Defendant Agency failed to provide her with a reasonable accommodation.

200.    Defendant Agency's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

201.    Defendant Agency acted with malice and with reckless disregard for Plaintiff's protected right to reasonable accommodations in the workplace.

202.    As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Fifth Cause of Action
### Colorado Anti-Discrimination Act—Discriminatory Termination of Employment
### (Against Defendant San Juan Basin Area Agency on Aging)

203.    Plaintiff realleges all prior paragraphs and incorporates them herein.

204.    Plaintiff exhausted her administrative remedies under the Colorado Anti-Discrimination Act.

205.    Defendant Agency knew that Plaintiff suffered from disabilities including chronic neck and back pain and a traumatic brain injury.

206.    Defendant Agency knew that Plaintiff's disabilities caused difficulties with lifting, sitting, concentrating and thinking, and limited Plaintiff's brain and neurologic bodily functions.

207.    Defendant Agency regarded Plaintiff as having a disability.

208.    Defendant Agency knew that Plaintiff had a record of a disability.

209.    Defendant Agency terminated Plaintiff's employment on September 19, 2022 because of Plaintiff's disability, because it regarded Plaintiff as having a disability, or because Plaintiff had a record of having a disability.

210.    Defendant Agency's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

211.    Defendant Agency acted with malice and with reckless disregard for Plaintiff's protected right not to be terminated because of his status as a qualified individual with a disability.

212.    As a result of Defendant Agency's discriminatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Sixth Cause of Action**
**Colorado Anti-Discrimination Act—Retaliation**
**(Against Defendant San Juan Basin Area Agency on Aging)**

213.    Plaintiff realleges all prior paragraphs and incorporates them herein.

214.    Plaintiff engaged in protected activity when she submitted a grievance complaining about discrimination, requested a reasonable accommodation for her disability, when she opposed disability discrimination, and when she hired a lawyer to advocate for her rights in the workplace.

215.    Plaintiff was subjected to materially adverse actions when Defendant Agency demoted her, failed to accommodate her disabilities, and terminated her employment.

216.    Defendant Agency subjected Plaintiff to materially adverse actions, including the termination of Plaintiff's employment because of Plaintiff's protected activity.

217.    Defendant's acts and omissions violated Plaintiff's rights under the Colorado Anti-Discrimination Act.

218.    Defendant Agency acted with malice and with reckless disregard for Plaintiff's statutorily protected right not to be subjected to materially adverse actions or terminated because of her protected activity.

219.    As a result of Defendant Agency's retaliatory conduct, Plaintiff has suffered damages, including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

### Seventh Cause of Action
### Colorado Anti-Discrimination Act—Aiding and Abetting Discrimination
### (Against Defendant Knoell)

220.    Plaintiff realleges all prior paragraphs and incorporates them herein.

221.    Defendant Agency engaged in acts defined by CADA to be discriminatory or unfair employment practices, including but not limited to failing to accommodate Plaintiff's disabilities, demoting Plaintiff, and terminating Plaintiff's employment.

222.    Defendant Knoell knowingly aided, abetted, incited, compelled, or coerced Defendant Agency to engage in those acts by, among other things: disregarding Plaintiff's requests for reasonable accommodations, falsely denying any knowledge of Plaintiff's disabilities or need for reasonable accommodations, demoting Plaintiff, cutting Plaintiff's pay and benefits, and terminating Plaintiff's employment.

223.    Because Defendant Knoell aided, abetted, incited, compelled, or coerced Defendant Agency to engage in acts defined by CADA to be a discriminatory or unfair

employment practice, Plaintiff has suffered damages including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Eighth Cause of Action**
**Intentional Interference with Contract**
**(Against Defendant Knoell)**

224.    Plaintiff realleges all prior paragraphs and incorporates them herein.

225.    Plaintiff had an at-will employment contract with Defendant Agency.

226.    Defendant Knoell knew of Plaintiff's contract.

227.    Defendant Knoell, by words and/or conduct, intentionally caused Defendant Agency to terminate its contract with Plaintiff, or interfered with Defendant Agency's performance of the contract causing Defendant Agency to terminate the contract with Plaintiff.

228.    Defendant Knoell's interference with this contract was improper.

229.    As a direct and proximate result of Defendant Knoell's actions, Plaintiff has suffered damages including lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.    A declaration that Defendant Agency discriminated against Plaintiff in violation of the, the Rehabilitation Act and the Colorado Anti-Discrimination Act;

2.    Backpay in amount equal to lost compensation and benefits;

3.    Damages for all other monetary losses sustained as a direct result of the violations;

4.      Non-pecuniary and compensatory damages, including damages for humiliation, emotional distress, and consequential damages;

5.      Reinstatement or front pay in lieu thereof;

6.      Nominal damages;

7.      Pre- and post- judgment interest at the highest statutory rate;

8.      Costs and attorney's fees; and

9.      All other legal or equitable relief the court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues triable by jury.

Respectfully submitted this 20th day of November, 2023.


CORNISH & DELL'OLIO, P.C.


s/Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
CORNISH & DELL'OLIO, P.C.
431 N. Cascade Avenue, Suite 1
Colorado Springs, CO 80903
Phone: (719) 475-1204
Fax: (719) 475-1264
Email:  ikalmanowitz@cornishanddellolio.com
Attorneys for Plaintiff

Plaintiff's Address:
2565 Clarendon Drive
Colorado Springs, CO 80916